IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| WILLIAM WALKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 7:11-cv-131-O-BN |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff William Walker seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that he is disabled as a result of a stroke and due to a variety of ailments, including high blood pressure, macular degeneration, and a leg injury. Administrative Record [Dkt. No. 13 at 171]. After his application for disability and supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See id.* at 95. That hearing was held on March 23, 2009. *See id.* at 15. At the time of the hearing, Plaintiff was fifty years old. *See id.* at 26. He has a high school equivalency diploma and past work experience as a handyman. *See id.* at 26-29. Plaintiff has not engaged in substantial gainful activity since July 3, 2006. *See id.* at 17.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 15. Although the medical evidence established that Plaintiff suffered from hypertension and impaired vision and that Plaintiff had a history of a right leg injury and a cerebrovascular accident, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 17. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work but could not return to his past relevant employment. *See id.* at 17-20. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a sandwich maker, curb attendant, or ticket taker – jobs that exist in significant numbers in the national economy. *See id.* at 20-21. Given his age, education, and exertional capacity for medium work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 21.

Plaintiff appealed that decision to the Appeals Council. *See id.* at 10. The Council affirmed. *See id.* at 1-3.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. In multiple grounds, Plaintiff argues that the ALJ committed reversible error because the assessment of his RFC is not supported by substantial evidence and results from reversible legal error.

The Court determines that the hearing decision should be affirmed in all respects.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing

that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. The ALJ made this assessment based on record evidence that shows that, in 1986, Plaintiff sustained a serious crush injury to his lower right leg while he was working as a lumberjack. *See* Administrative Record [Dkt. No. 13 at 285]. He has had nine surgeries on his lower right leg and still experiences chronic leg pain and walks with a limp. *See id.*

On May 26, 2006, Plaintiff was admitted to the hospital with a headache caused by high blood pressure. In addition to headache, his symptoms included right-sided weakness, dizziness, and vision problems. He was also diagnosed with renal failure. He was not being treated for high blood pressure prior to his hospitalization. After two days of treatment in the hospital, his headache had resolved, and his blood pressure returned to normal. He was dismissed with instructions to stop smoking, continue his medications, and follow up with lab work. *See id.* at 224-25, 229.

On September 21, 2006, Plaintiff underwent an internal medicine consultative examination by Gary T. Evans, M.D., who noted that Plaintiff had been diagnosed with a hypertensive stroke occurring in the summer of 2006. According to Plaintiff, he had

not followed up after his hospitalization because of financial problems. Plaintiff told Dr. Evans that he had dizziness with headaches, balance problems, visual difficulties, right-side weakness, difficulty with coordination, frequent headaches, severe balance problems such that he tends to fall down, chronic pain and stiffness in his right leg, and his right leg tends to give away on him, especially since the stroke. Dr. Evans's exam revealed decreased mobility in the right lower leg. Plaintiff's motor strength was grossly intact even though it was hard to evaluate the right lower leg due to problems with pain. Dr. Evans observed Plaintiff's gait as he was leaving, and he noted that Plaintiff had a limp involving the right leg but otherwise walked without significant problem. Dr. Evans's impression was that Plaintiff had suffered a recent hypertensive cerebrovascular accident, most likely ischemic, and that he had continued symptoms of weakness, dizziness, balance problems, and visual difficulties. Dr. Evans also stated that Plaintiff said he had recently been diagnosed with macular degeneration, but Dr. Evans had no documentation supporting that diagnosis. Furthermore, Dr. Evans noted Plaintiff's previous crush injury to the right lower leg with chronic pain, stiffness, and weakness in the lower extremity. *See id.* at 285-86.

On September 28, 2006, Plaintiff underwent an ophthalmological consultative examination by Dr. Marilyn White. Plaintiff's visual acuity for distance, without correction, was 20/200 in the right eye and 20/40 in the left eye and, with best correction, would be 20/200+ in the right eye and 20/40 in the left eye; for distance, without correction, both eyes were off the chart, and, with best correction, the right eye was off the chart, and the left eye was 20/40. Plaintiff's field of vision was normal for

the left eye and restricted for the right eye. Dr. White's diagnosis was probable hypertensive retinopathy with residual macular edema in both eyes; possible ischemic optic nerve damage, which was less likely in the left eye than the right eye; and possible progressive night blindness in both eyes. Dr. White's prognosis was that the right eye may recover better vision if hypertension is controlled and macular edema and exudates clear. The left eye should maintain good vision if no other adverse ischemic events occur. She recommended that Plaintiff be evaluated by a retinal consultant. *See id.* at 288-89.

On October 10, 2006, State agency medical consultant John Durfor, M.D. reviewed Plaintiff's medical records, including those from the consultative examinations, and assessed Plaintiff's RFC. Dr. Durfor concluded that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour work day, sit (with normal breaks) for a total of about six hours in an eight-hour work day, and do unlimited pushing or pulling. As to postural limitations, Dr. Durfor found that Plaintiff should never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally stoop, kneel, crouch, or crawl; and could do frequent stooping. He also found that Plaintiff should avoid concentrated exposure to hazards, such as machinery or heights. Dr. Durfor commented that Plaintiff had decreased mobility in his right leg; Plaintiff had a limp but walked without assistance; Plaintiff smoked a pack and a half of cigarettes a day; and Plaintiff reported that he had no money for

8

medical treatment. Dr. Durfor found Plaintiff's alleged limitations not fully credible. *See id.* at 297-304.

On February 7, 2007, Walter Buell, M.D. affirmed Dr. Durfor's RFC. *See id.* at 319.

On March 16, 2007, Plaintiff was admitted to the hospital with high blood pressure, headache, visual disturbances, and blurred vision with vomiting. He was treated in the hospital for six days because his blood pressure "was so hard to control." The admitting doctor, Delbert McCraig, D.O., noted that Plaintiff had been noncompliant with medical therapy in the past, claiming that it was too expensive even though he had been given samples on his last visit. On discharge, Plaintiff was instructed to pick up medication samples in the clinic. He was also given medication to help him stop smoking. *See id.* at 436-39.

On May 7, 2007, Plaintiff was treated in the emergency room for dizziness. His condition improved after treatment with a saline drip. *See id.* at 424-26.

On September 8, 2007, Plaintiff was admitted to the hospital for headache, dizziness, bradychardia (slow heartbeat rate), and extremely high blood pressure. The bradychardia was resolved when one of Plaintiff's medications was discontinued. Plaintiff's high blood pressure was once again extremely difficult to control, and he was kept in the hospital for four days. When he was discharged, hospital staff gave him samples of some medications and made arrangements for him to get samples of others from the clinic. *See id.* at 633, 638-39.

On September 5, 2008, Plaintiff had a follow-up clinic visit for hypertension, depression, and chronic foot pain. His medications were refilled. *See id.* at 693.

On November 6, 2008, Plaintiff was treated in a clinic for high blood pressure and headache. He was given medication in the office to get his blood pressure down and was given a prescription for medication. *See id.* at 699.

The medical record also shows several authorizations for medication refills between October 30, 2008 and February 12, 2009. *See id.* at 697-99.

Based on the evidence of record, the ALJ found that Plaintiff had the RFC to perform medium work with the following restrictions: never climb a ladder, rope, or scaffold; occasionally climb a ramp or stairs, stoop, kneel, crouch, or crawl; frequently balance; and avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. The ALJ also found that Plaintiff had diminished visual acuity, with 20/40 vision in his left eye with a normal visual field and 20/200 vision in his right eye with a restricted visual field. *See id.* at 17-18.

Plaintiff claims that this RFC is not supported by substantial evidence because: (1) the ALJ improperly gave great weight to the opinion of the agency's medical consultant who did his review before all of Plaintiff's medical evidence was developed; (2) conversely, the ALJ failed to give controlling weight to Plaintiff's treating and examining physicians' opinions; (3) the ALJ improperly evaluated Plaintiff's credibility; and (4) due to his medical conditions, Plaintiff could not sustain employment – that is, contrary to the ALJ's implied finding, Plaintiff could not sustain employment even if he were hired for a job. *See* Dkt. No. 18.

1.

Plaintiff's primary complaint is that the ALJ gave great weight to the opinion of the State agency medical consultant, Dr. Durfor, and that the ALJ's RFC mirrors that of Dr. Durfor. *See* Administrative Record [Dkt. No. 13 at 17-20, 297-304]. Plaintiff argues that this was erroneous because all of the medical evidence had not been developed at the time the medical consultant assessed Plaintiff's RFC. According to Plaintiff, the ALJ could not rely on the medical consultant's opinion because it does not take into consideration his continuing need for medical care and his allegedly deteriorating condition.

Prior to the medical consultant's opinion, the record shows that Plaintiff had a serious crush injury to his lower right let in 1986. Plaintiff was hospitalized for the first time in May of 2006. He was treated for headache caused by high blood pressure. Plaintiff was examined by two agency consulting physicians in September of 2006, and the State agency's medical consultant reviewed Plaintiff's medical records and rendered an opinion on October 10, 2006. After the consultant's opinion was rendered, Plaintiff was hospitalized twice, went to the emergency room once, and to a clinic twice. Each time he was diagnosed with complications associated with high blood pressure and treated with medication.

"As factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ is not bound by the state agency physician's opinions, but he may not ignore them and must explain in his decision the weight given

to those opinions. *See* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996); *Helbing v. Astrue*, No. 4:11-cv-704-Y, 2012 WL 6719469, at *12 (N.D. Tex. Oct. 29, 2012). In this case, the ALJ explained that "great weight is given to the opinion of the State agency medical consultant." Administrative Record [Dkt. No. 13 at 19].

The medical evidence that accrued after the State agency medical consultant's opinion was merely cumulative of the evidence upon which that opinion was based, and the ALJ's decision demonstrates that he considered all of the evidence. In his decision, the ALJ acknowledged that Plaintiff had a long-standing and documented history of hypertension for which medication is prescribed, a history of lower extremity injury for which pain medications are prescribed, and a history of cerebrovascular accident. *See id.* at 18. He discussed each of Plaintiff's hospitalizations, specific medical test results both before and after the medical consultant's opinion, and the two consultative examinations. *See id.* at 19. Plaintiff suffered from the same medical problems – high blood pressure and related complications – both before and after the medical consultant rendered his RFC opinion.

Plaintiff argues that "the most lacking part of the RFC found by the ALJ" is its failure to address Plaintiff's need for a cane. Dkt. No. 18 at 6. In his decision, the ALJ made several observations about Plaintiff's use of a cane. In a disability report, Plaintiff stated that he sometimes walks with a cane, but the stroke had not further worsened his ability to walk, and he still had use of both arms and legs. Administrative Record [Dkt. No. 13 at 18, 171]. At the administrative hearing, Plaintiff testified that he used a cane. *See id.* at 18, 31. The ALJ summarized Dr. Evans's finding from the

12

consultative examination, specifically that Dr. Evans observed Plaintiff's gait as he was leaving. Plaintiff had a limp involving the right leg but walked without any other significant problems except for problems with the limp. *See id.* at 18. Much of the medical evidence concerning the cane was generated before the medical consultant's opinion and is consistent with Plaintiff's subsequent testimony. Furthermore, the ALJ made accommodations for Plaintiff's leg injury by including in the RFC physical restrictions that are consistent with use of a cane.

The Court concludes that this alleged ground for error should be denied.

2.

Plaintiff next contends that the ALJ failed to give substantial and controlling weight to Plaintiff's treating and consulting physicians' opinions. However, Plaintiff has not pointed the Court to any opinions rendered by any treating or examining physicians, and review of the administrative record has not revealed any.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993); 20 C.F.R. § 404.1527(d)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation and who has or has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. A treating source opinion cannot be rejected

13

absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

In this case, there was no treating physician's opinion concerning whether Plaintiff's medical conditions limited or impaired his ability to engage in work related activities. Other than the agency's medical consultant and the two doctors who performed consultative examinations, the only doctors mentioned in the administrative record are those who treated Plaintiff in either the emergency room or hospital. In the hospital records, Plaintiff identifies Jay Turk, M.D. as his primary care physician. Dr. Turk treated Plaintiff in the hospital, subsequently at a clinic, and authorized medication refills. Administrative Record [Dkt. No. 13 at 438, 693, 697-98]. But neither Dr. Turk nor anyone other than the medical consultant rendered an opinion that could be construed as commenting on Plaintiff's ability to work. They simply diagnosed his medical conditions and discharged him with instructions to continue his medications and stop smoking.

Accordingly, the ALJ did not err because there was no treating or examining source's opinion to consider, much less to reject. *See Gonzales-Sargent v. Barnhart*, No. SA-06-CA-0355-XR, 2007 WL 1752057, at * 8 (W.D. Tex. June 15, 2007) ("Since there was no rejection of a treating physician's opinion, the ALJ was required to explain in her decision the weight given to the opinions of the state agency medical consultants and the medical expert.").

3.

Plaintiff next argues that the ALJ improperly assessed his credibility. The ALJ determined that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." Administrative Record [Dkt. No. 13 at 18]. Plaintiff argues that the ALJ erred because he did not evaluate Plaintiff's subjective complaints of pain and other symptoms in accordance with *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). In that case, the Fifth Circuit acknowledged that pain, in and of itself, can be a disabling condition but only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Id.* The Fifth Circuit also pointed out that "'[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Id.* (quoting *Elzy v. R.R. Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)).

The social security regulations establish a two-step process for evaluating subjective complaints of pain and other symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR-96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Where such an impairment has been proved, the ALJ must evaluate the intensity, persistence, and limited effects of the symptoms to determine whether they limit the ability to do basic work activities.

*Id.; see also* 20 C.F.R. § 404.1529. In addition to objective medical evidence, the ALJ should consider the following factors in assessing the claimant's credibility:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp.2d 863, 871 (E.D. Tex. 2005).

At the administrative hearing, Plaintiff testified that he had worked as a handyman for fifteen to eighteen years after his leg injury. That work included painting, maintenance, and mowing lawns. He did not report any of that income to the IRS. He also testified that he cannot walk without a cane and that he wears a leg brace

on his boot. He several medications, but his high blood pressure still is not under control. When he has high blood pressure, he experiences dizziness, blacks out, and has balance and vision problems. He also experiences headaches every day as a result of the stroke. The headaches vary in intensity and only thing that resolves them is for him to lay down for three to four hours. He does not have problems with his hand or fingers. His vision is so bad that he cannot read a newspaper or signs in a doctor's office. He drives, but cannot read road signs, and drove as recently as the day before the hearing. He needs someone assist with him grocery shopping. He smokes a pack of cigarettes a day even though he was advised to stop smoking when he had a stroke in 2006. He claims to be compliant and takes medications as prescribed. He also claims that Dr. Evans was mistaken when he failed to note that Plaintiff used a cane and that Dr. Evans did not observe him walk. *See* Administrative Record [Dkt. No. 13 at 28-30, 32-33, 41-42, 44-46, 48-51, 54-55, 59-60, 63-64].

In his decision, the ALJ noted that Plaintiff gave inconsistent statements concerning his use of and need for a cane. When he applied for benefits, he stated that he sometimes walks with a cane but that the stroke in the spring of 2006 had not further worsened his ability to walk and he still had use of both arms and legs. At the hearing, however, he testified that he needed a cane anytime he walked. The ALJ also observed that Plaintiff was noncompliant with medical therapy. Plaintiff was instructed to stop smoking each time he was discharged from the hospital. In his decision, the ALJ noted that "[o]ffice treatment records from September 2008 reveal the claimant continued to smoke despite warning to cease given his history of CVA and

17

hypertension." Furthermore, there are notations in the hospital records that Plaintiff failed to follow up with his medications, claiming they were too expensive even though he had been given samples or arrangements had been made for him to get them from the clinic. *See id.* at 18-19.

Contrary to his assertion, Plaintiff failed to establish that his pain, in and of itself, was disabling. Instead, the Court finds that the ALJ, who had an opportunity to observe Plaintiff, cited to the applicable regulations, summarized the evidence, and articulated legitimate reasons for finding that Plaintiff's testimony was "not entirely credible." The Court concludes that this alleged ground for error should be denied as well.

4.

Finally, Plaintiff attacks the RFC on the basis that if fails to take into account whether his medical conditions prevent him from sustaining employment. Plaintiff argues that his medical conditions of high blood pressure, headaches, and balance problems would prevent him from keeping a job even if he were hired.

An RFC assessment includes an implied finding that a claimant can sustain work activity at the determined level. When making the RFC determination, the ALJ assesses the nature and extent of the individual's limitations and determines that the claimant can work "on a regular and continuing basis." 20 C.F.R. § 416.945(b)-(c). But the ALJ is not required to make a specific finding that the claimant can maintain a job unless "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). Plaintiff

18

does not contend that his medical condition waxes and wanes, causing only periodic disability. Instead, he alleges that he is completely disabled. Therefore, the ALJ was not required to make a specific finding that Plaintiff could sustain employment, and this alleged ground for error should also be denied.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 4, 2013

                _____
                DAVID L. HORAN
                UNITED STATES MAGISTRATE JUDGE